STATE OF NEW JERSEY,
STATE BOARD OF TAXES AND ASSESSMENT.

In the matter of the application of the PATERSON SAVINGS INSTITUTION for the reduction of the tax assessment for the year 1923 on property situate in the city of Pater-, son, county of Passaic and State of New Jersey.

[Filed December 18th, 1923.]

**Taxation—Savings Banks—To Become Entitled to Exemption Under Act of 1918, the Institution must be Mutual in Nature Without a Capital Stock—Profits for the Benefit of Depositors not of Stockholders.**

*Mr. John M. Harding,* for the petitioner.

*Mr. Edward F. Merrey,* for the respondent.

*Mr. James J. Murner, pro se.*

Mr. JESS.

The Paterson Savings Institution appeals from the action of the Passaic county board of taxation with respect to the assesment of the institution's real and personal property located in the city of Paterson. The petition sets forth the following facts: The property of the petitioner was assessed by the taxing officials of the city of Paterson as of October 1st, 1922, as follows:

| | |
|---|---|
| Land .................................... | $158,400 |
| Buildings ............................... | 185,000 |
| Personal property, consisting of furniture .. | 15,000 |
| Total ............................ | $358,400 |

After the tax rate for the city of Paterson had been fixed at $3.09, and the table of aggregates had been transmitted to the county collector, the county tax board made large in-

creases in the valuations of taxable property in some of the wards of Paterson and substantial decreases in other wards. Among the assessments increased was that of the personal property of the petitioner, which was raised from $15,000 to $2,759,000. The petitioner appealed to the county board from the valuation thus increased. At about the same time James J. Murner, who is secretary of the Passaic county board of taxation, filed with the board, as a resident and taxpayer, an appeal praying that the assessment on petitioner's property should be increased to the following amounts:

| | |
|---|---|
| Land | $500,000 |
| Buildings | 200,000 |
| Personal | 3,599,909 |

After hearing evidence and argument on these cross-appeals, the county board rendered three judgments. The first dismissed the appeal of the Paterson Savings Institution. The second judgment, on the appeal of Murner, placed the assessment on the savings institution's personal property at $2,759,400. The third judgment revised the assessment on real property, as follows:

| | |
|---|---|
| Land | $331,500 |
| Improvements | 203,700 |
| Total | $535,200 |

The petitioner alleges that it is aggrieved by the foregoing judgments for the following reasons: *First,* because the county board was without power to make the changes in the assessments at the time the changes were made; *second,* because the petitioner, in accordance with the provisions of its charter, was liable only for a tax of one per centum upon its paid-up capital, payable annually to the state in lieu of all state, county and municipal taxation, which tax has been paid; *third,* because its personal property, not including exempt bonds, amounting to $14,982,970.19, was not taxable, inasmuch as petitioner's debts claimed to be deductible

from the valuation of its personal property amounted to $21,621,243.97; *fourth,* because, if taxable as a banking association the petitioner is taxable only upon the shares of its capital stock under the provisions of the Bank Stock Tax act of 1918; *fifth,* because the assessment is illegal, excessive and discriminatory.

Upon the hearing of this appeal evidence was taken and argument hear on behalf of the petitioner the city of Paterson and the county board. Counsel for the petitioner and the city, at the conclusion of the argument, concurred in the view that the petitioner probably was subject to taxation under the provisions of the statute commonly known as the Bank Stock Tax act. *P. L. 1918 p. 997.* It was then agreed by all parties that, if the board should be of the opinion that the petitioner lawfully was taxable under that act, the board's decision on that issue would be accepted as dispositive of all the questions raised by the appeal, except the question as to the value of the real property of the petitioner.

The Bank Stock Tax act was approved March 31st, 1914 (chapter 90, laws of 1914), and amended by an act approved March 24th, 1918 (chapter 265, laws of 1918). The supreme court declared the statute to be constitutional in the case of *Commercial Trust Co. of New Jersey* v. *Hudson County Board of Taxation, 86 N. J. Law 424.* One of the grounds upon which the constitutionalty of the act was assailed was that the legislature had created a class for the purpose of taxation and had not included all the members of the class, since it excluded private bankers and savings banks. Speaking for the court, Mr. Justice Swayze held that this exclusion was warranted by the fact that savings banks are quite different from ordinary banks of discount and deposit. "They are," he said, "engaged in a different business, not primarily for the making of money, but rather for the purpose of enabling people of small means to * * * earn a moderate rate of interest. So far as they are without capital stock, the same reasons that justify the omission of

private bankers from the act justify the omission of savings banks."

Mr. Justice Swayze stated he had looked into the facts and found but one savings bank with capital stock—the Paterson Savings Institution.  He points out, however, that while under its original charter (*P. L. 1869 p. 1265*) there was nothing to prevent its stockholders from making a profit, as any bank of deposit and discount might, that charter expired by its own limitation in 1889.  "It may have been extended," he continues, "under the act of 1888 (*Gen. Stat. p. 3013 pl. 73, 74*), but, if so, it must necessarily have been subject to the provisions of the general act of 1876 (*Gen. Stat. p. 3000*), since otherwise the act for the extension of the charter would amount to a special act conferring corporate powers, and be forbidden by the constitutional amendment of 1875.  Article 4, section 7, paragraph 11.  In 1888, the general act (*Gen. Stat. p. 3006 § 32*) required that depositors should receive, as nearly as might be, all profits of the corporation after deducting necessary expenses and reserving a surplus for the security of depositors.  Similar provisions are to be found in the act of 1906.  *Comp. Stat. p. 4705 pl. 40.*  These statutory provisions, as well as the strict limitation of the character of investments to be made by savings banks, emphasize the fact that they are not commercial institutions like other banks and trust companies. I think they form a class by themselves, and may properly be excluded from an act taxing commercial banks and trust companies."  In affirming the judgment below (*87 N. J. Law 179*) the court of errors and appeals reached the same result with respect to the effect of the existence of the Paterson Savings Institution upon the classification of the bank-taxing statute, but by different reasoning.  Mr. Justice Garrison, who spoke for the court, adverted to the express provision in the general act under which the corporate existence of the Paterson institution was extended that:

" 'Every such saving bank shall be subject to such general laws on the subject of taxation as shall apply to other savings banks.'  *P. L. 1888 p. 264.*

"If this be so," the opinion concludes, "the present classification is unaffected by the fact that this savings institution has shares of stock, whereas, if it be not so, such institution falls within the classification of the statute."

While neither of the opinions which we have cited clearly indicates the course to be followed in disposing of the case under review, both are helpful in solving the problem presented. In neither case was the Paterson Savings Institution before the court. The facts as to the scope of its business or the method of its operation were not disclosed. The only reason for reference to it in the supreme court opinion was that its existence raised a serious question as to the validity of the classification of the Bank Stock Tax act. To sustain that classification the court deemed it essential to demonstrate that the Paterson Savings Institution could not be distinguished from savings institutions as a class.

The court of errors and appeals, when it came to pass upon the same question, did not find it necessary to adopt the views of the lower court, but rested its decision upon different ground as already has been shown.

Two deductions are warranted by these opinions. The first is that if it had been established as a fact before the supreme court that the Paterson Savings Institution was authorized to, and actually does, issue capital stock, and that the holders of the stock receive dividends thereon from the earnings of the institution in the same way that shareholders participate in the profits of commercial banks, the court would have held that its exclusion from the bank-taxing classification rendered the act invalid.

The second deduction is that any savings institution having shares of stock upon which it is permitted to pay dividends may fall within the class contemplated by the Bank Stock Tax act, even though that acts excludes "savings banks" from its operation.

This brings us to a consideration of the actual status of the petitioner.

The Paterson Savings Institution was incorporated under the provisions of a special act of the legislature. *P. L. 1869*

*p. 1265.* Its period of existence was limited to twenty years. It was authorized to issue capital stock to the amount of $100,000, divided into shares having a par value of $100 each. It is empowered to regulate the rate of interest allowed to depositors so that they shall receive a just proportion of the profits upon the business of the corporation. The only restriction upon the declaration of dividends upon the stock of the corporation is that such dividends shall not be paid out of capital, nor at any time when losses equal or exceed gains. It also is given broader loaning powers than are enjoyed by savings banks organized under the general act.

The general act concerning savings banks was passed in 1876. *P. L. 1876 p. 341; Rev. 1877 p. 1058; P. L. 1906 p. 348.* By a supplement to this act passed in 1888 (*P. L. 1888 p. 264*) it was provided that any savings bank or savings institution theretofore or thereafter created under any law of this state, at any time before the expiration of its charter, or of the period named in its certificate of organization, might extend its existence for any period not exceeding fifty years. The supplement further provided that "every such savings bank shall be subject to such general laws on the subject of taxation as shall apply to other savings banks." In conformity with the requirement of the constitution as amended in 1875, this act was general in its application, but the history of the legislation indicates that it was intended primariy to permit the Paterson Savings Institution, whose charter was about to expire, to extend the period of its corporate existence. Whatever may have been the genesis of the statute, the fact is that the Paterson Savings Institution availed itself of the privilege which the act conferred and continues by virtue thereof to exercise its corporate powers. It is further to be noted that this corporation has not availed itself of the privilege provided in the Savings Bank act (*Rev. 1877 p. 1068 § 52*), that any savings institution then existing might, if it desired, come under and be subject to the provisions of that statute.

NEW JERSEY MISCELLANEOUS REPORTS.  39

State Bd. Taxes, &c.—In re Paterson Savings Institution.

The Paterson Savings Institution, therefore, in its origin and in its operation, is *sui generis*. Its corporate powers are derived, not from the general statutory authority for the incorporation of savings banks, but from the act of 1869, under which it was organized, and, apparently, under the supplement of 1888 under which its corporate existence was continued.

The Savings Bank act expressly provides that it shall not apply to any savings bank organized under a special charter as a stock company prior to March 8th, 1877, except as to certain sections. An examination of these excepted sections shows that their application to the Paterson Savings Institution in nowise impairs the fundamental powers which differentiate it from all other savings banks. We need not discuss these differences in detail, but simply point out that in two determinative characteristics the Paterson Savings Institution is, in its operation, distinguishable from all other savings institutions. The first is that it is a corporation having a capital stock; the second is that the shareholders as such participate in the gains and profits of the business. In these respects the institution has no similarity to other savings banks which are essentially and by force of law associatons in which the depositors are the sole participants in the net profits; it is precisely similar to ordinary banks of deposit and discount whose net earnings inure to the stockholders.

We are therefore of the opinion that the Paterson Savings Institution is within the class of banking associations made subject to a special scheme of taxation by the Bank Stock Tax act of 1918, notwithstanding the provision of section 11 of that act. This section reads as follows: "Savings banks incorporated as such under the laws of this state relative thereto, as distinguished from other banks, banking associations and trust companies, shall be exempt from taxation under this act." Had the object of the legislative draftsman been expressly to exclude the Paterson Savings Institution from the purview of the exempting provision, words more

apt to express the purpose could hardly have been chosen. This institution was not incorporated under the laws of the state relative to savings banks, and it is not, as has been shown, in important particulars, distinguished from other banks, banking associations and trust companies.

The result of these conclusions is that the shares of the petitioner should be assessed in accordance with the provisions of the Bank Stock Tax act. As to the real property of the petitoner we are of the opinion that the judgment of the county board with respect thereto should be affirmed. If and when the new valuation is duly made the assessments upon the petitioner's personal property under review should be canceled, and a judgment entered substituting therefor an assessment levied in accordance with the views herein expressed.